UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONVERGENT WEALTH ADVISORS LLC,

<div style="margin-left:2em">Plaintiff,</div>

   -against-

LYDIAN HOLDING COMPANY, LYDIAN TRUST
CO., LYDIAN WEALTH MANAGEMENT
COMPANY LLC, CMS STRATEGIES COMPANY,
LLC, WINDERMERE INVESTMENT
ASSOCIATES, LLC, and WINDERMERE CAPITAL
MANAGEMENT LLC,

<div style="margin-left:2em">Defendants.</div>

---

12 Civ. 01199 (SAS)

ECF Case

Hon. Shira A. Scheindlin

 

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

 

MILLER & WRUBEL P.C.
570 Lexington Avenue
New York, New York 10022
(212) 336-3500
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ......................................................................................................... iii

Preliminary Statement ........................................................................................................ 1

Statement of Facts ............................................................................................................. 2

Argument ........................................................................................................................... 5

I.      FED. R. CIV. P. 12(b)(1) REQUIRES DISMISSAL BECAUSE THERE IS NO
"CASE OR CONTROVERSY" WITHIN THE MEANING OF ARTICLE III,
SECTION 2 OF THE UNITED STATES CONSTITUTION ............................................ 5

      A.     Convergent's Indemnification Claims Are Not Ripe for Adjudication
under Article III Until the Underlying Claim Has Been Adjudicated ................... 5

      B.     Because Defendants Have No Duty to Defend, Just an Option to Defend,
There Is No Justiciable Controversy as to the Obligation to Pay Legal Fees ....... 10

II. ........................................................................................................................................ 12

II.    ALTERNATIVELY, DISMISSAL IS REQUIRED UNDER RULE 12(b)(6)
BECAUSE CONVERGENT HAS FAILED TO STATE ANY CLAIM UPON
WHICH RELIEF CAN BE GRANTED ......................................................................... 12

      A.     The First Cause of Action (Breach of Contract) Fails Because Defendants
Have Not Breached any Contractual Obligations .................................................. 12

            1.     In the Absence of an Award on an Excluded Liability, Convergent
Has No Right to Indemnification from Defendants ................................. 12

            2.     The Purchase Agreement Does Not Require Defendants to Defend
or Advance Attorneys' Fees to Convergent ............................................ 12

      B.     The Second Cause of Action (Common Law Indemnification/
Contribution) Fails Because Convergent Has Not Paid any Underlying
Award and the Purchase Agreement Does Not Require Defendants to
Advance Attorneys' Fees to Convergent ............................................................... 13

i

C.     The Third Cause of Action (Declaratory Judgment) Fails  Because There Is No Jurisdiction to Provide a Declaratory  Judgment In the Absence of an Article III "Case or Controversy" ..................................................................... 14

Conclusion ...................................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Ashwander v. Tenn. Valley Auth.,
  297 U.S. 288 (1936) ..................................................................................15

Blue Hen Mechanical, Inc. v. Atlantic States Ins. Co.,
  No. N10C-04-078 MMJ, 2011 Del. Super. LEXIS 176 (De. Super. Apr. 21,
  2011)..........................................................................................................9

Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,
  90 F.3d 671 (2d Cir. 1996) ......................................................................15

Certainteed Corp. v. Celotex Corp.,
  No. 471, 2005 Del. Ch. LEXIS 11 (Del. Ch. Jan. 24, 2005) ...........13, 14

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002) ..................................................................3, 13

LaPoint v. Amerisourcebergen Corp.,
  970 A.2d 185, 2009 Del. LEXIS 132 (Del. 2009)...............................passim

Lear Corp. v. Johnson Elec. Holdings Ltd.,
  353 F.3d 580 (7th Cir. 2003) .....................................................................8

Levy v. Hayes Lemmerz International, Inc.,
  No. 1395-N, 2006 Del. Ch. LEXIS 68 (Del. Ch. Apr. 5, 2006) .............14

Madeira v. Affordable Housing Foundation, Inc.,
  323 Fed. App'x 89, 2009 U.S. App. LEXIS 8585 (2d Cir. 2009) .............9

Maryland Casualty Co. v. Pacific Coal & Oil Co.,
  312 U.S. 270 (1941) .................................................................................15

Maryland Casualty Co. v. Rosen,
  445 F.2d 1012 (2d Cir. 1971) ..................................................................15

Molex Inc. v. Wyler,
  334 F. Supp. 2d 1083 (N.D. Ill. 2004)..............................................passim

Public Service Com. v. Wycoff Co.,
  344 U.S. 237 (1952) ..............................................................................5, 15

Tyson Foods, inc. v. Allstate Ins. Co.,
  No. 09C-07-087 MJB, 2011 Del. Super. LEXIS 379 (Del. Super. Aug. 31,
  2011)...........................................................................................................8

United Westlabs, Inc. v. Greenwich Ins. Co.,
  No. 09C-12-048 MMJ, 2011 Del. Super. LEXIS 261 (Del. Super. June 13,
  2011)...........................................................................................................8

**Statutes**

28 U.S.C. § 1332(c)(1) ................................................................................................3

28 U.S.C. § 2201 ...................................................................................................7, 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................1, 9, 16

Fed. R. Civ. P. 12(b)(6) ............................................................................1, 12, 15, 16

**Constitutional Provisions**

U.S. Const. art. III, § 2 .....................................................................................1, 9, 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONVERGENT WEALTH ADVISORS LLC,<br><br>                    Plaintiff,<br><br>    -against-<br><br>LYDIAN HOLDING COMPANY, LYDIAN TRUST CO., LYDIAN WEALTH MANAGEMENT COMPANY LLC, CMS STRATEGIES COMPANY, LLC, WINDERMERE INVESTMENT ASSOCIATES, LLC, and WINDERMERE CAPITAL MANAGEMENT LLC,<br><br>                    Defendants. | 12 Civ. 01199 (SAS)<br><br>ECF Case<br><br>Hon. Shira A. Scheindlin |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

      Defendants Lydian Holding Company, Lydian Trust Company, Lydian Wealth

Management Company LLC (collectively, "Lydian"), CMS Strategies Company LLC,

Windermere Investment Associates, LLC and Windermere Capital Management LLC

(collectively, including Lydian, "Defendants") respectfully submit this Memorandum of Law in

support of their motion for an order pursuant to Fed. R. Civ. P. 12(b)(1) dismissing the

Complaint for lack of a "case or controversy" within the meaning of U.S. Constitution, Article

III, section 2, or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim on which

relief can be granted.

### Preliminary Statement

      In March 2007, Lydian sold wealth management assets to plaintiff Convergent

Wealth Advisors LLC ("Convergent") pursuant to a Purchase and Sale Agreement dated as of

March 26, 2007 (the "Purchase Agreement"). The Purchase Agreement contains indemnification obligations running from Defendants to Convergent. In May 2011, three of Convergent's customers (the "Shermans") brought a still-pending arbitration (the "Arbitration") against Convergent. In the Complaint, Convergent sues Defendants on their indemnification obligations to Convergent, claiming that Defendants must indemnify Convergent with respect to the Shermans' claims.

Leaving aside that Convergent's indemnification claim is substantively meritless because the Shermans' claims do not fall within the scope of Defendants' indemnity obligations, Convergent's Complaint must be dismissed because the Arbitration is ongoing and its outcome – including the possibility that Convergent will defeat the Shermans' claims – is unknowable.

Accordingly, under settled law concerning indemnification, there is no "case or controversy" before the Court within the meaning of U.S. Constitution, Article III, section 2. In addition, as a matter of contract law, the conditions for indemnification under the plain terms of the Purchase Agreement have not been fulfilled. Either or both of these grounds require dismissal of the Complaint.

## Statement of Facts

This Statement of Facts is based on the allegations set forth in the Complaint, and the terms of the Purchase Agreement and arbitration claim against Convergent, both of which the Court may consider since they are quoted and generally relied on in the Complaint.[1] On a motion to dismiss under Rule 12(b)(6), a court may consider documents outside the four corners of the complaint if the documents are "'integral' to the complaint." Chambers v. Time Warner,

---

[1] Copies of the Purchase Agreement and the Statement of Claim in the arbitration are annexed as Exhibits A and B, respectively, to the Declaration of Joel M. Miller, executed March 23, 2012.

Inc., 282 F.3d 147, 153 (2d Cir. 2002).  Here, the Purchase Agreement and arbitration claim are not just "integral" – they are the sole basis for the Complaint.

Convergent and Defendants all are, or were, directly or indirectly in the wealth management business, that is, the business of advising high net worth individuals and managing their assets.  Convergent and Defendants are diverse for purposes of 28 U.S.C. § 1332(c)(1). Notice of Removal, filed February 16, 2012.

On or about March 26, 2007, Convergent's predecessor entities entered into the Purchase Agreement with Defendants.  Compl., ¶ 10.  Pursuant to the Purchase Agreement, through an LLC then called "Newco," Convergent agreed to acquire certain of Defendants' assets and to assume only certain liabilities, defined as the "Assumed Liabilities."  Compl. ¶ 11. Following the closing of the transaction, which occurred on May 1, 2007, Newco changed its name to Convergent.  Id.

Pursuant to the Purchase Agreement, Defendants agreed to "indemnify, defend and hold harmless" Convergent "from and against, and pay … [Convergent] … for , any and all Losses to the extent incurred or suffered by … [Convergent] and arising out of or resulting from: … (ii) any Excluded Liabilities" (contractually distinguished from the "Assumed Liabilities"). Compl., ¶ 12.  While both the "Excluded Liabilities" and "Assumed Liabilities" definitions are multifold, both definitions, not surprisingly, use as a touchstone whether a liability is based on an event "prior to the Closing," *i.e.* May 1, 2007 (Purchase Agreement at 8, defining "Excluded Liabilities") or "after the Closing" (id. at 4, defining "Assumed Liabilities").

Under the Purchase Agreement, Defendants' obligation to defend Convergent is not absolute, but at Defendants' option.  Exhibit D to the Purchase Agreement, called "Indemnification Procedures," states that the "Indemnifying Party [for this purpose, Defendants]

may, *at its option*, assume and control the defense of such claim ...." Purchase Agreement (Miller Decl. Exh. A), Exh. D, ¶ 2 (emphasis added).

Further, with respect to Convergent's legal fees in defending such claims, the Purchase Agreement provides that Defendant has no obligation to reimburse such legal fees unless and until there has been a determination of Defendants' obligation to indemnify. Purchase Agreement, Exh. D (" ... *if such Indemnified Party is entitled to indemnification under this Article IX*, all reasonable legal and other expenses reasonably incurred by the Indemnified Party shall be borne by the Indemnifying Party") (emphasis added). As set forth more fully below, that question – whether Defendants must indemnify Convergent – is not ripe for adjudication unless and until there is an award in the Arbitration.

As noted, the closing under the Purchase Agreement took place on May 1, 2007. Over four years later, on or about May 27, 2011, the Shermans brought an arbitration proceeding against Convergent. Compl., ¶ 13. Convergent denies liability. Id. ¶ 14.

It is apparent from the face of the Shermans' arbitration complaint that the gravamen of their claims involves *Convergent's* conduct after the May 1, 2007 closing, not anything that Defendants did prior to the closing. Miller Decl. Exhibit B at ¶¶ 1, 16. The very first paragraph of the Statement of Claim states: "This arbitration arises from the devastating losses sustained by the Sherman Family at the hands of *Convergent* in connection with investment management services provided to the Sherman Family *starting in June, 2007*." (Statement of Claim at 1, ¶ 1, emphasis added.) The Statement of Claim makes no claims of any contract between the Shermans and Lydian, *only a contract between the Shermans and Convergent, entered into post-Closing on June 1, 2007*. (Id. at 6, ¶ 16.)

4

Nonetheless, because of the Shermans' reference to events in "early 2007" in their Statement of Claim, in this action Convergent claims indemnification from Defendants. Compl., ¶ 15.

The Complaint does not allege that Defendants undertook the defense of Convergent against the Shermans' arbitration claims, and it is both unsurprising and undisputed that Defendants did not exercise their option to undertake the defense, given the dubious nature of Convergent's claim that Defendants have any indemnification obligation at all. But the dispositive fact, for present purposes, is that the Complaint does not allege that there has been any award in the Shermans' arbitration proceeding against Convergent; and it is undisputed that no such award has been rendered.

## Argument

### I.

### FED. R. CIV. P. 12(b)(1) REQUIRES DISMISSAL BECAUSE THERE IS NO "CASE OR CONTROVERSY" WITHIN THE MEANING OF ARTICLE III, SECTION 2 OF THE UNITED STATES CONSTITUTION

The requirement of an actual case or controversy for there to be subject matter jurisdiction, including in an action seeking a declaratory judgment, is well-settled. E.g., Public Service Com. v. Wycoff Co., 344 U.S. 237 (1952).

**A.      Convergent's Indemnification Claims Are Not Ripe for Adjudication under Article III Until the Underlying Claim Has Been Adjudicated**

In evaluating whether Convergent's putative state law claims are ripe for adjudication, the Court needs to look at the applicable state law.

The substantive law of Delaware controls the resolution of all matters between and among the parties to the Purchase Agreement:

> This Agreement, the legal relations between the Parties and the adjudication and the enforcement thereof, shall be governed by and interpreted and construed in accordance with the substantive laws of the State of Delaware without regard to applicable choice of law provisions thereof.

Purchase Agreement, § 10.11 at 69.[2]

The Delaware Supreme Court has specifically addressed the question of whether there is a "case or controversy" within the meaning of Article III, Section 2 of the United States Constitution in the circumstance where, as here, there is a *potential* indemnification obligation, but that obligation is still inchoate because there has not yet been a ruling as to liability in the underlying proceeding. And the answer is clear: in this circumstance, there is *no* case or controversy.

In LaPoint v. Amerisourcebergen Corp., 970 A.2d 185, 2009 Del. LEXIS 132 (Del. 2009), the Delaware Supreme Court had before it the question of whether *res judicata* and/or the statute of limitations barred a claim for indemnification under a merger agreement. The lower courts had held the indemnification claim to be barred, finding that it could have been raised in prior litigation. However, the underlying claim had not been resolved at the time of the prior litigation. The Supreme Court *reversed*, holding that "***Indemnification claims do not accrue until the underlying claim is finally decided***." 970 A2d. at 198 (emphasis added).

In LaPoint, the Delaware Supreme Court expressly adopted the reasoning of Molex Inc. v. Wyler, 334 F.Supp.2d 1083, 1085 (N.D. Ill. 2004). 970 A.2d at 196-97. Molex involved a stock purchase agreement in which the seller of the stock agreed to defend and indemnify the buyer of the stock with respect to any claim to the stock made by persons not

---

[2] Although they chose Delaware substantive law, in the same Section of the Purchase Agreement the parties submitted to the jurisdiction of "any federal court located within the State of New York over any dispute arising out of or relating to this Agreement or the Transactions ...." Id.

6

disclosed in the purchase agreement. Such a claim was made by such a person in a litigation in Massachusetts (referred to as the "Massachusetts litigation"), and the buyer brought an action like this one, for breach of the contract to defend and indemnify and for a declaratory judgment as to those obligations.

The court first noted that while the Declaratory Judgment Act, 28 U.S.C. § 2201, allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration," "[b]efore the Court can decide whether a declaratory judgment is appropriate ..., *we 'must first determine whether the court has subject matter jurisdiction, i.e., whether the case presents an "actual controversy" between the parties.'*" 334 F. Supp. 2d at 1086 (emphasis added).

The court then considered whether an "actual controversy" existed with respect to the seller's obligations to defend and indemnify with respect to the Massachusetts litigation. Noting that "[t]he duty to defend and the duty to indemnify allegations require separate analysis," 334 F.Supp.2d at 1086, the court found an actual controversy with respect to the duty to defend. However, as set forth in the Statement of Facts, above, *in this case there is no controversy at all with respect to Defendants' duty to defend*, since undertaking the defense is at Defendants' option (Purchase Agreement, Exh. D, ¶ 2), and no claim is made in the Complaint that Defendants have breached a duty to defend Convergent.

Continuing on to the duty to indemnify, the court held that the claims for indemnification, whether framed as claims for declaratory relief or for breach of contract, did *not* satisfy Article III's requirement of a "case or controversy." 334 F. Supp. 2d at 1087-89. Noting that "[a]s a general rule, 'decisions about indemnity should be postponed until the underlying liability has been established,'" 334 F. Supp. 2d at 1087 (quoting Lear Corp. v. Johnson Elec.

7

Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003)), the court stated that "[t]his rule is in place because *a declaration regarding the duty to indemnify may have no real-world impact if no liability arises in the underlying litigation*." Id. (emphasis added).  The declaration "could therefore amount to an impermissible advisory opinion" that would be "ill-advised because [it would] 'consume judicial time in order to produce a decision that may turn out to be irrelevant.'" Id. (quoting Lear, 353 F.3d at 583).

As to the buyer's argument that it would be more convenient to decide the duty to defend and duty to indemnify together – an argument that cannot exist here because the duty to defend is not at issue – the court concluded, in language quoted by the Delaware Supreme Court in LaPoint, that "*convenience concerns cannot trump Article III's ripeness requirement*." Id. (emphasis added); see also LaPoint, 970 A.2d at 197.  *A fortiori*, ripeness is lacking as to the duty to indemnify claim made by Convergent in this action.  There has been no award in the Arbitration and its outcome is unknowable.

That LaPoint, decided in 2009, remains Delaware law is beyond debate.  See Tyson Foods, inc. v. Allstate Ins. Co., No.  09C-07-087 MJB, 2011 Del. Super. LEXIS 379, at *20 (Del. Super. Aug. 31, 2011) (duty to indemnify does not arise until "the facts in that [underlying] claim are actually established" (citing LaPoint, 970 A.2d at 197)); United Westlabs, Inc. v. Greenwich Ins. Co., No. 09C-12-048 MMJ, 2011 Del. Super. LEXIS 261, at *22 (Del. Super. June 13, 2011) (same); Blue Hen Mechanical, Inc. v. Atlantic States Ins. Co., No. N10C-

04-078 MMJ, 2011 Del. Super. LEXIS 176, at *8-9 (De. Super. Apr. 21, 2011) (same.) Accordingly, its rule applies here.[3]

Finally, in Molex the court noted that the rule that indemnification claims based on not-yet-adjudicated underlying claims are not ripe for purposes of Article III is the "general" rule rather than an "absolute" one. 334 F.Supp.2d at 1087. The only exceptional case noted, however, was one involving insurance in a case where the insured was likely to be liable and could not satisfy the impending judgment. Id. The Molex court found that exception inapplicable to the facts before it, which were analogous to those here, and in LaPoint the Delaware Supreme Court brushed it aside in circumstances where, as here, the "declaratory judgment ... on the indemnification issue [would] become irrelevant if [the underlying claimant] lost ...." 970 A.2d at 197.

In short, since all of Convergent's claims in this action are based on Defendants' alleged duty to indemnify, and there is no dispute that the Arbitration is ongoing and its result unknowable, there is no "case or controversy" before the Court within the meaning of Article III, § 2, of the United States Constitution. Accordingly, dismissal of the Complaint pursuant to Rule 12(b)(1) is mandated.

---

[3] While there is no reason for the Court to deviate from the parties' contractual choice of Delaware law, we note that New York law would reach the same result. See, e.g., Madeira v. Affordable Housing Foundation, Inc., 323 Fed. App'x 89, 91, 2009 U.S. App. LEXIS 8585, at **2-3 (2d Cir. 2009) (New York law "distinguishes an agreement to indemnify against loss and an agreement to indemnify against *liability*. Under an agreement to indemnify against loss, a right to indemnification does not accrue until the indemnified party has satisfied the judgment ... [citing New York cases] .... [A] right to indemnification against liability arises when judgment [on the underlying claim] is entered ... [citing New York cases]." (emphasis in original)).

**B.      Because Defendants Have No Duty to Defend,
         Just an Option to Defend, There Is No Justiciable
         <u>Controversy as to the Obligation to Pay Legal Fees</u>**

Convergent asserted, in the parties' exchange of pre-motion letters pursuant to Rule IV.B. of the Court's Individual Rules and Procedures, that this action raises a justiciable controversy because Defendants have a duty to defend Convergent.  That assertion, however, is based on an obvious misreading of the terms of the Purchase Agreement, as well as the facts and holdings of the <u>Molex</u> and <u>LaPoint</u> decisions.

Defendants very plainly do ***not*** have a "duty" to defend Convergent.  Defendants have an ***option*** to defend Convergent:  The "Indemnifying Party [for this purpose, Defendants] may, ***at its option***, assume and control the defense of such claim …."  Purchase Agreement, Exh. D, ¶ 2 (emphasis added).

With respect to Convergent's legal fees in defending such claims, the Purchase Agreement provides that no reimbursement of such legal fees by Defendants is required unless and until there has been a determination of Defendants' obligation to indemnify.  Purchase Agreement, Exh. D (" … ***if such Indemnified Party is entitled to indemnification under this Article IX***, all reasonable legal and other expenses reasonably incurred by the Indemnified Party shall be borne by the Indemnifying Party" (emphasis added)).  Thus, there is no duty to defend, but there ***may*** be a duty to ***indemnify*** as to defense costs, a matter that will be decided along with any other indemnification issue when the time comes.  There is no separate step of first determining defense obligations, because the Purchase Agreement is clear that there are no defense obligations, just the option to defend.

The Purchase Agreement's indemnity structure is very logical, especially for a situation like this where, on their face, the Shermans' arbitration claims against Convergent

appear not to be Excluded Liabilities (and therefore not indemnifiable at all).  Convergent can

tender the defense to Defendants, but Defendants have no duty to defend and can rationally

exercise the option not to defend, given the extreme weakness of the indemnity claim.

Convergent is not harmed because, if it is right about the indemnification, it can claim defense

costs (or a portion thereof) from Defendants once the underlying claim is adjudicated.  ***But that

is a determination of indemnification, not of the duty to defend.***

   Thus, as concerns the duty to defend, the Purchase Agreement presents the Court

with a fact pattern materially different from the duty to defend dispute in <u>Molex</u>.  There, the

indemnifying party agreed not only to indemnify but unconditionally to "defend;" there was no

option, as there is here in the Purchase Agreement, to decline the defense and make legal

expenses a component of the indemnified amount (if indemnification were later found to be

required).  <u>See</u> 334 F.Supp.2d at 1085 ("Wyler also agreed to indemnify and defend Molex").

   In <u>LaPoint</u>, the party seeking fees was the successful plaintiff in the underlying

dispute.  The duty to ***defend*** did not apply, only indemnification which included attorneys' fees.

Despite a duty to defend, the claim did not ripen until the stockholders [the plaintiffs in <u>LaPoint</u>]

won and demanded legal fees.  970 A.2d at 25.

   In short, there is no "case or controversy" before the Court at this time.  The duty

to indemnify claim is and will be unripe until the Shermans' arbitration claims are decided.  The

same is true as to the duty to defend, because the Purchase Agreement gives the Defendants the

option not to defend, and leave defense costs as a potential part of the indemnity.

## II.

## ALTERNATIVELY, DISMISSAL IS REQUIRED UNDER RULE 12(b)(6) BECAUSE CONVERGENT HAS FAILED TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendants submit that, for the reasons set forth above, this Court lacks subject matter jurisdiction to do more with this action than dismiss it for the lack of any justiciable "case or controversy." But even if the Court were to consider the legal sufficiency of Convergent's allegations under Rule 12(b)(6), the Court should dismiss the Complaint for failure to state any claim upon which relief can be granted.

**A.** **The First Cause of Action (Breach of Contract) Fails Because Defendants Have Not Breached any Contractual Obligations**

**1.** **In the Absence of an Award on an Excluded Liability, Convergent Has No Right to Indemnification from Defendants**

As discussed in Point I.A. above, in LaPoint the Delaware Supreme Court held that "*Indemnification claims do not accrue until the underlying claim is finally decided.*" 970 A2d. at 198 (emphasis added). Because Convergent has not pled and cannot plead that "the underlying claim is fully decided" here, it fails to state a claim on which relief can be granted. (This is especially the case where, as here, on the face of the Shermans' arbitration claim it is highly doubtful that any Excluded Liability is involved in the arbitration.) In the absence of a fully decided underlying claim, there is no duty to indemnify. Without there being a duty to indemnify, there can be no breach of that duty.

Thus, no breach of contract claim is stated as to any duty to indemnify.

**2.** **The Purchase Agreement Does Not Require Defendants to Defend or Advance Attorneys' Fees to Convergent**

The outcome is no different as concerns Convergent's claim as to an alleged duty to defend. The Court is permitted to and should take notice of the terms of the Purchase

Agreement.  Chambers, 282 F.3d 147, 153.  As discussed in Point I.B., above, the Purchase

Agreement gives Defendants the option ***not*** to defend Convergent in the Shermans' arbitration;

Defendants can opt not to defend Convergent and shift any defense costs into being part of the

potential claim for indemnity.

        Exercising this option is not a breach of contract no matter how Convergent tries

to plead it.  It cannot be a breach of contract to act in accordance with the contract.

        The error of Convergent's position is further illustrated by the absence of any

provision in the Purchase Agreement as to the advance of attorneys' fees by Defendants to

Convergent and any mechanism for Defendants to recoup those attorneys' fees if, as expected, it

is ultimately found that the Shermans' claims are not Excluded Liabilities.  The Purchase

Agreement does not require Defendants to advance attorneys' fees to Convergent; therefore, it is

not a breach of contract for Defendants to decline to do so.

        Thus, no breach of contract claim is stated as to the alleged duty to defend.

**B.      The Second Cause of Action (Common Law Indemnification/
         Contribution) Fails Because Convergent Has Not Paid any
         Underlying Award and the Purchase Agreement Does Not
         <u>Require Defendants to Advance Attorneys' Fees to Convergent</u>**

        Convergent's Second Cause of Action is for "common law indemnification and/or

contribution."  It fails for substantially the same reasons as Convergent's first cause of action:

under Delaware law, there is no common law right to indemnification and/or contribution as to a

third-party claim until the party seeking indemnification or contribution ***has made payment to***

***the third party***.  Certainteed Corp. v. Celotex Corp., No. 471, 2005 Del. Ch. LEXIS 11, at *25

(Del. Ch. Jan. 24, 2005) ("Where the claim is one for indemnification or contribution for

damages paid to a third party, a cause of action accrues only after the party seeking

indemnification has made payment to the third party"); Levy v. Hayes Lemmerz International, Inc., No. 1395-N, 2006 Del. Ch. LEXIS 68, at **38-39 (Del. Ch. Apr. 5, 2006) ("[A] claim for indemnification in the common law sense is defined by reference to a particular action, and becomes legally cognizable when payment is made to a third party on that action specifically" (citing Certainteed, 2005 Del. Ch. LEXIS 11, at *8)).[4]

This is not changed by the fact that Convergent is paying its own legal expenses in defending the Shermans' arbitration claim.  As discussed in detail above, the Purchase Agreement is clear in giving Defendants the option not to defend Convergent in the Shermans' arbitration, and the Complaint claims no duty to defend.  Any defense costs for which indemnification may later be claimed are part of the indemnification claim subject to the rule articulated in Certainteed and Levy.  Put differently, one's own attorney is not a "third party" for purposes of indemnification claims involving "payment to a third party."  The case law is clearly referring to payment to the plaintiff on the underlying claim.

**C.     The Third Cause of Action (Declaratory Judgment) Fails Because There Is No Jurisdiction to Provide a Declaratory Judgment In the Absence of an Article III "Case or Controversy"**

Convergent's Third Cause of Action seeks "a declaration of Defendants' indemnification and/or contribution obligations to Convergent ...."  Complaint, ¶ 41.  This Cause of Action fails because there is no jurisdiction to provide a declaratory judgment in the absence of an Article III "case or controversy."

---

[4] Both the Certainteed and Levy courts noted that this is New York law as well.  Certainteed, 2005 Del. Ch. LEXIS 11, at *8, n.2; Levy, 2006 Del. Ch. LEXIS, at *38, n.44.

The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, provides a form of remedy for certain cases and controversies, but it is axiomatic that the Act does not create a "case or controversy" where none exists:

> The Declaratory Judgment Act of 1934, now 28 U. S. C. § 2201 … provides that in a case of actual controversy a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." …. This Act was adjudged constitutional only by interpreting it to confine the declaratory remedy within conventional "case or controversy" limits.

Public Service Com., 344 U.S. at 241 (citing Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 325 (1936)).  This remains the law.  As stated in Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671, 675 (2d Cir. 1996):

> It is by now traditional law that "'the judicial power does not extend to . . . abstract questions.'"  [Citing Public Serv. Com. and Ashwander.]  It follows that, in the absence of an "actual controversy," a district court is without power to grant declaratory relief.  Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272, 85 L. Ed. 826, 61 S. Ct. 510 (1941); Maryland Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971).

See also Molex, 334 F. Supp. 2d at 1086.

We showed in Point I, above, that there is no "case or controversy" ripe for adjudication at this time, under settled law involving indemnification and contribution claims, both contractual and common law.  It adds nothing for Convergent to invoke the Declaratory Judgment Act and pray for declaratory relief.  The allegations in the Complaint that "a justiciable controversy exists" (Compl., ¶¶ 39-40) are simply wrong as a matter of law, and the Court is under no obligation to treat them as correct.

Accordingly, the Third Cause of Action fails to state a claim on which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6).

## Conclusion

Defendants respectfully request that the Court enter an order pursuant to Rule 12(b)(1), or alternatively Rule 12(b)(6), dismissing the Complaint in this action.

Dated:  March 23, 2012

<div align="right">

MILLER & WRUBEL P.C.

By:   _____

Joel M. Miller
Charles R. Jacob III
570 Lexington Avenue
New York, New York 10022
(212) 336-3500

Attorneys for Defendants

</div>