C6s4conc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   CONVERGENT WEALTH ADVISORS LLC,
3               Plaintiff,

4          v.                              12CV1199(SAS)

5  LYDIAN HOLDING CO., et al.,
                Defendants.
6  ------------------------------x

7                                    New York, N.Y.
                                     June 28, 2012
8                                    5:00 p.m.

   Before:
9
                   HON. SHIRA A. SCHEINDLIN
10
                                     District Judge
11
                        APPEARANCES
12
   LOEB & LOEB
13      Attorneys for Plaintiff
   ALYSON M. WEISS
14 JOHN PISKORA

15 MILLER & WRUBEL
        Attorneys for Defendants
16 CHARLES R. JACOB III

17

18

19

20

21

22

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

C6s4conc

1           (Case called)

2           THE COURT:  I have two letters here, June 20 from

3    Ms. Weiss, saying that she would like to move for summary

4    judgment, and a response June 22 Mr. from Mr. Jacob saying I

5    don't get it, the plaintiff wanted discovery, the plaintiff

6    wanted the discovery schedule to be even longer than the

7    defendants proposed, now the plaintiff wants to leap over the

8    need for all discovery and go right to summary judgment.  The

9    defendants' lawyer says this end run is not going to work out,

10   I am going to make a Rule 56(d) request to take discovery

11   anyway if you move for summary judgment which only make the

12   motion get old.

13           Just a reading of the letters, upon reading the

14   letters, I must say I thought defendants' position made more

15   sense.  It seemed like a big switch in position from the

16   plaintiff.  Maybe I don't understand what you mean by summary

17   judgment.  You have been doing discovery for a reason.  I

18   gather the real issue for discovery is what they have to cover,

19   what defendants have to cover, because it depends whether it

20   was pre-contract or post-contract.

21           MR. JACOB:  Pre-closing or post-closing.

22           THE COURT:  Pre-closing or post-closing conduct, and

23   that's not entirely clear and that's one thing discovery would

24   show.  But that said, are you funding anything yet.

25           MR. JACOB:  No, we are not.

C6s4conc

1        THE COURT:  That's the problem.  They are continuing

2   to incur these expenses and you are not stepping up to the

3   plate.  It could be reallocated after, but you are not funding

4   anything.  You have a duty to defend.

5        MR. JACOB:  Can I speak to that, your Honor.

6        THE COURT:  Yes.  That's why they are fired about

7   this.

8        MR. JACOB:  The underlying arbitration claim has four

9   counts, causes of action.  Only one of them, the fraudulent

10  inducement claim, even relates at all to pre-closing conduct.

11  These others are 100 percent post-closing.  And most notable as

12  an example is there is a breach of contract claim on a contract

13  between the arbitration claim and the plaintiff Convergent

14  entered into post-closing.  So by definition, and the other

15  claims are similar, that's all post-closing conduct.

16        THE COURT:  Given my decision, what is it you have to

17  cover.

18        MR. PISKORA:  I believe under your decision we are

19  potentially responsible, I say potentially just to cover my

20  bases because I am speaking on the record, for the fraudulent

21  inducement claim only and even that I believe can be parsed

22  more narrowly than just saying it's one claim, it's 25 percent.

23  We don't think that's the way this arbitration is happening at

24  all.

25        THE COURT:  What does that mean, that the fraudulent

C6s4conc

```
1   inducement claim which arguably you have to cover because I
2   said so, might only be 10 percent; is that what you are saying.
3           MR. JACOB:  That's what I am saying.
4           THE COURT:  But whatever it is, you should be covering
5   that portion.  It could be 1 percent; according to my decision,
6   you have to cover it, right.  Yes.
7           MR. JACOB:  Whatever that portion is.
8           THE COURT:  Whatever that portion is under my decision
9   you should be covering it.  So why aren't you negotiating some
10  protocol with the plaintiff now to fund something.
11          MR. JACOB:  I think if we were approached with such a
12  discussion, we would respond to it and have the discussion.  My
13  problem with the letter that was written to your Honor is that
14  it doesn't say summary judgment as to what exactly and it
15  doesn't say what kind of evidence they are going to be offering
16  under Rule 56 to establish the crucial point.  In the contract,
17  your Honor, it's the words to the extent, you quoted it in your
18  decision, and you also used the words at least in part.  We
19  need to look at that and we need to see how it relates to their
20  legal fees.
21          We all know, your Honor, I have had cases and I am
22  sure you have had cases where one count was one of four or one
23  of ten, but by the time the hearings or the trial arrived, it
24  was just the tail on the dog and it wasn't so important
25  anymore.  We don't know any of that.  We don't know how their
```

C6s4conc

1    hours billed relate to the various claims, so that's what we

2    want discovery on.  We also think, if I can speak to this

3    action more broadly, your Honor allowed to stand their claim

4    for declaratory relief on the indemnity aspect of the case.  We

5    do have a discovery schedule; that is what it is.  We entered

6    into a scheduling order.

7            So we need to have discovery in any event because this

8    case isn't just about legal fees; it's about their claim for

9    declaratory relief that you allowed to stand.  So, again a

10   little bit of the puzzlement expressed in my letter to the

11   court is we set a discovery schedule.

12           THE COURT:  I don't think they can get summary

13   judgment on the indemnification claim.

14           MR. JACOB:  No, I don't think that's what they are

15   looking for, but they didn't really say exactly what they are

16   looking for.

17           THE COURT:  It's not that because it would be

18   premature.  For the record, Ms. Weiss is nodding her head yes.

19   The indemnification claim is not in play.  What they want is

20   defense costs now.

21           MR. JACOB:  My point was only that discovery is going

22   to need to be taken anyway so why don't we have a schedule.

23           THE COURT:  Because they are not getting any funding.

24   Their fees mounting up and you are not offering anything; you

25   are not offering to fund a quarter or 10 percent.

C6s4conc

1          MR. JACOB:  Then they have to at least start the

2     process your Honor indicated of presenting us with evidence as

3     to what extent we should be covering.

4          THE COURT:  Maybe they don't agree that it should be

5     apportioned at all.  Maybe they think it should be 100 percent

6     even though one of the four claims involved pre-closing

7     conduct.  What is your position, Ms. Weiss.

8          MS. WEISS:  Your Honor, our position is they should be

9     funding all of our attorney fees.

10          THE COURT:  Why.

11          MS. WEISS:  Because there is not a single thing that I

12     am doing to defend, what I am doing to defend all of the

13     claims, I would have to do all of that same work anyway to

14     defend the fraud claim.

15          THE COURT:  The fraudulent inducement claim, even

16     though some of the claims are contract claims that occurred

17     after the closing.

18          MS. WEISS:  All of the claims essentially relate to

19     the due diligence that was done by my client.

20          THE COURT:  Before entering into what, before what,

21     due diligence before what.

22          MS. WEISS:  The alleged misrepresentations on the

23     fraudulent inducement claims are in part that my client would

24     do fantastic due diligence on all of these various funds that

25     the claimants invested in.  There is no way to defend the

C6s4conc

```
 1   fraudulent inducement claim without looking at the due
 2   diligence that was actually performed.  So, everything I am
 3   doing to defend the fraudulent inducement claim I would be
 4   doing to defend the other claims.
 5            THE COURT:  I don't understand that because I don't
 6   understand the case.  I don't know what you talk about that
 7   occurred post-closing.
 8            MS. WEISS:  The pre-closing allegations are the
 9   fraudulent inducement claims --
10            THE COURT:  I understand that.
11            MS. WEISS:  -- which the defendants here have already
12   acknowledged, I think that's cited in your Honor's decision,
13   occurred pre-closing.
14            THE COURT:  Correct.
15            MS. WEISS:  The alleged misrepresentations that
16   occurred pre-closing relate to the fact that Convergent
17   allegedly represented that it would do excellent due diligence,
18   I am paraphrasing, but essentially.  And so in order to defend
19   that fraud claim, we have to delve into the due diligence that
20   was actually done post-closing as well as whatever was said
21   pre-closing.
22            THE COURT:  That's where I am lost.  I don't know why
23   you think the post-closing claims are not related to the
24   pre-closing claims; I don't know the facts of this case.
25            MR. JACOB:  Your Honor, here are the facts of this
```

C6s4conc

| | |
|---|---|
| 1 | case.  In February 2007, there was a person named Steve |
| 2 | Lockshin, who was the CEO of Lydian, the defendant.  In |
| 3 | February 2007, he allegedly had this one exchange with the |
| 4 | arbitration claimant in which he made misrepresentations. |
| 5 | THE COURT:  Sherman. |
| 6 | MR. JACOB:  Sherman.  In March 2007, Lydian and |
| 7 | Convergent go to the contract of sale and at that point, |
| 8 | Mr. Lockshin is going to be leaving Lydian, which he did, and |
| 9 | going with Convergent and he is the CEO or the chairman now I |
| 10 | believe of Convergent.  Nothing at all is alleged in the |
| 11 | Shermans' arbitration claim between February and June, and June |
| 12 | is post-closing; the closing was May 7.  The Shermans were |
| 13 | never clients of Lydian, never; they were not clients of |
| 14 | Lydian. |
| 15 | Mr. Lockshin left.  He took the potential clients, the |
| 16 | Shermans, with him as he was entitled to do, and then later |
| 17 | post-closing, Convergent was hired pursuant to a contract with |
| 18 | the Shermans, but they had already left.  In other words, |
| 19 | Lydian never got a single dollar from this whole event |
| 20 | involving the Shermans; it all went with Mr. Lockshin to |
| 21 | Convergent. |
| 22 | THE COURT:  The Shermans are suing Convergent where |
| 23 | Lockshin went. |
| 24 | MR. JACOB:  Absolutely.  The arbitration claim goes on |
| 25 | for 15 pages after February 07 with post-closing events going |

C6s4conc

1  into 2009.  So with all due respect to Ms. Weiss, the

2  suggestion that we have to pay all their legal fees for their

3  customers suing them, where the great majority, we concede not

4  all, that's why your Honor ruled as you did, but the great

5  majority of what's complained of is post-closing.  The

6  suggestion that we have to may all their attorney fees --

7          THE COURT:  Where does your duty to pay the defense

8  costs arise.

9          MR. JACOB:  In the purchase and sale agreement.

10         THE COURT:  Between whom and whom.

11         MR. JACOB:  Lydian and Convergent, there are other

12 entities but let's just call it Lydian and Convergent, we have

13 to pay, quote, to the extent, unquote, the underlying claim

14 arises prior to the closing.  To the extent; those are the

15 words in the contract.

16         THE COURT:  What are the exact words.

17         MR. JACOB:  They are actually in your opinion.

18         THE COURT:  I didn't bring my opinion.

19         MR. JACOB:  That's fine.  Can I approach.

20         THE COURT:  Just read it.

21         MR. JACOB:  We agree, quote, to indemnify, defend and

22 hold harmless the buyer parties from and against --

23         THE COURT:  The buyer party, that's Convergent.

24         MR. JACOB:  -- reimburse, I am sorry, let me start

25 again.  To, quote, indemnify, hold harmless the buyer parties.

C6s4conc

```
 1                THE COURT:  Use the names.

 2                MR. JACOB:  Indemnify, defend and hold harmless

 3     Convergent from and against and pay, reimburse Convergent for

 4     any and all losses to the extent arising out of excluded

 5     liabilities.  Excluded liabilities for this purpose just means

 6     pre-closing.  To the extent are the words in the contract.  So

 7     we only have to pay their legal fees to the extent their legal

 8     fees relate to the pre-closing claim.  That's the only

 9     reasonable interpretation of this contract.  But it's also

10     common sense; this is their customer not our customer.  There

11     is one reference to us.

12                MS. WEISS:  If I may, with all due respect, it's

13     misleading to say, to portray that Mr. Lockshin took the client

14     from Lydian to Convergent.  There was a transaction, pursuant

15     to which Convergent, pursuant to which Convergent came into

16     being.  Convergent didn't exist until this purchase agreement.

17     So, Lydian's assets were sold to another entity and then there

18     was an entity renamed Convergent.

19                THE COURT:  Then that entity took action.

20                MS. WEISS:  It did; however, the fraudulent inducement

21     all relates to activities pre-closing and not only relates to

22     statements made by Mr. Lockshin, who by the way the Lydian

23     defendant have now asserted a third-party claim against in this

24     matter, but does not only relate to statements he allegedly

25     made, but it relates to actual written marketing materials with
```

C6s4conc

1    Lydian's name all over them that were provided to the Shermans

2    and which the Shermans --

3            THE COURT:   To the Shermans, Mr. Jacob, you provided

4    written materials to the Shermans.

5            MR. JACOB:   That's not clear enough; that's, for

6    example, one thing we would like discovery on.  Lydian doesn't

7    have these documents anymore; we sold the business.

8            MS. WEISS:   We have given that.

9            MR. JACOB:   But we want to have formal discovery.  We

10   would like to take Mr. Lockshin's deposition and say did you

11   give this to them.  It's just not enough to have pieces of

12   paper in a file.

13           THE COURT:   Did you give it to them when you were with

14   Lydian.

15           MR. JACOB:   My answer today is I don't know.  That's

16   one of the things I would like to find out.  Let me explain

17   why.  The people who --

18           MS. WEISS:   I gave you the email transmitting it.

19           THE COURT:   She gave you the email transmitting it;

20   you know the date.

21           MS. WEISS:   Of course.

22           THE COURT:   It was Lydian then; it's Lydian now.

23           MR. JACOB:   It appears that some materials were given

24   to the Shermans prior to the closing, but let me continue.

25   There was at least a month after the closing before the

C6s4conc

1    Shermans signed a contract with Convergent to become a client

2    of Convergent.  Then the wrongdoing that's alleged, your Honor,

3    is really in the performance of the contract.  This is one of

4    these cases --

5           THE COURT:  Between the Shermans and Convergent.

6           MR. JACOB:  Right.  This is one of these cases that if

7    it were in your court as a securities case, it would be a real

8    dismissal issue as to the fraud claim because it's really more

9    of a failure of performance that they said they would vet these

10   hedge funds and so on but then their performance was defective,

11   but 100 percent of the performance was post-closing by

12   definition.  So, I don't think it's productive for my opponent

13   to argue that we have to pay all of their legal fees.  We will

14   look at whatever kind of allocation they want to come to us

15   with.  If they make a summary judgment motion, obviously we

16   will do what we need to do.  But it's not helpful to suggest

17   that we pay all their legal fees.

18          THE COURT:  It doesn't sound it to me either.  I don't

19   think they owe you all the legal fees.  I don't buy your

20   argument that everything you are doing to defend the fraudulent

21   inducement you would have to do to defend against, you are

22   Convergent, that you would have to do that to defend Shermans'

23   claim for what Convergent did months later when Lockshin was

24   there and Lydian was gone.  Lockshin went on and did allegedly

25   bad things; that is why they are suing.

C6s4conc

1              MS. WEISS:  That's actually not a fair statement of

2      that case at all.  The alleged misrepresentations concerned

3      things like we will only pick funds, hedge funds for you --

4              THE COURT:  Who made those; Lockshin.

5              MS. WEISS:  But whatever was said or represented in

6      the written Lydian materials either was or was not true.

7              THE COURT:  That's true but those representations were

8      the fraudulent inducement claim.  If after the closing

9      Convergent was to do certain things and didn't, that's a new

10     activity.

11             MS. WEISS:  If after the closing, if pre-closing

12     Convergent represented that it was going to do certain things

13     and didn't --

14             THE COURT:  If Convergent represented.  Convergent.

15             MS. WEISS:  Correct.  I mean Lydian.

16             THE COURT:  Which do you mean.

17             MS. WEISS:  I misspoke.  If pre-closing, Lydian

18     represented that it was going to do certain things, for

19     example, like only put the Shermans' money into funds that had

20     a 5-year track record and then it ended up putting their money

21     in funds that had a 2-year track record --

22             THE COURT:  But it didn't end up putting its money

23     because Lydian was not involved at that point.  When the money

24     was actually invested, Mr. Jacob, you were out of the picture.

25             MR. JACOB:  That's correct.

C6s4conc

1          MS. WEISS:  It's not like they are two different

2    companies.

3          THE COURT:  It sure is.  Lydian sold out to

4    Convergent; Lydian is gone.

5          MS. WEISS:  My point is, your Honor, I don't see how I

6    would defend a fraud claim without looking at what was actually

7    represented on the one hand and what was actually done to

8    determine if (A) what was done was in fact what was

9    represented.

10         THE COURT:  Because if Lockshin is a crook, it depends

11   where he was when he was acting as one.

12         MS. WEISS:  It wasn't even Lockshin; he was chairman.

13   He was involved in the very beginning and wasn't really

14   involved later on.  That's beside the point.

15         THE COURT:  That makes it even less likely.  All I am

16   trying to say is after the sale, if Convergent does bad things,

17   it's responsible and Lydian is done.  I understand the

18   interaction, but to say it's all on Lydian, no.  In fact, that

19   wouldn't make any sense; it wouldn't make any sense.  We can

20   agree to disagree.

21         MS. WEISS:  If, for example, there were only the fraud

22   claim asserted, no negligence claims.

23         THE COURT:  That's right.

24         MS. WEISS:  If that were the case, only the fraud

25   claim asserted, wouldn't I still have to do discovery and

C6s4conc

1   provide documents to the other side in the arbitration at great

2   cost and expense that show what due diligence was done after

3   the closing and whether these managers --

4          THE COURT:  Due diligence by whom after the closing.

5          MS. WEISS:  Whether the due diligence done by

6   Convergent after the closing was in keeping with the

7   representations made by Lydian pre-closing.

8          THE COURT:  Frankly, I am missing it; I don't see the

9   connection.  If Lydian made misrepresentations, it's a new day

10  when Lydian's out of the picture and Convergent has bought it,

11  Convergent has now its own responsibilities.

12         MS. WEISS:  But that's not the allegation.

13         THE COURT:  Yes, it is exactly the allegation.  That's

14  what I am hearing.  If a crook goes from one company to another

15  and continues acting badly, that's the new company's problem.

16  It could have been the opposite.  This new company could have

17  said what Lydian did was bad but we are not going to go down

18  that road anymore, we are going to clean it up; we should have

19  discovered these or we did discover them and we should have

20  cleaned it up but we didn't.

21         MS. WEISS:  But in this situation Lydian became

22  Convergent; Convergent didn't even exist.

23         THE COURT:  I don't know why you are doing that.  Now

24  you are making a completely different argument.  Now it's the

25  successor liability; now it's the successor corporation.

C6s4conc

1              MS. WEISS:  Convergent was formed --

2              THE COURT:  I understand but it's a sale.  He used the

3      word buyer and I said substitute the name Convergent and he

4      did.  You have an argument that it's successor company and it's

5      successor liability.  That's a new argument.  Do some discovery

6      and if you want to win on the point of successor lability,

7      that's a different issue.  If it's a different company, there

8      is a break in liability.  The actions taken by Convergent are

9      Convergent's problems.  Lydian is the seller.  If it's an

10     arm's-length sale, it has no responsibility for Convergent, the

11     purchaser, unless it's all a sham and it's really one company

12     and it's really successor liability and they just changed names

13     and Lockshin just goes over, that's a whole new thought.

14             MS. WEISS:  No, your Honor, with all due respect, it's

15     just not the facts of this case.  Lydian --

16             THE COURT:  What's not the facts of this case.

17             MS. WEISS:  The way Mr. Jacob represented.

18             THE COURT:  No, maybe what I just said; maybe it was

19     just a name change.

20             MS. WEISS:  It was an assets sale, but Convergent

21     didn't exist.

22             THE COURT:  I know it didn't exist.  You want to make

23     an argument it's all the same company, it's really successor

24     liability, that it's a sham transaction.

25             MS. WEISS:  No, I am not suggesting it was a sham

C6s4conc

1   transaction at all.

2          THE COURT:  Are you suggesting it's successor

3   liability.

4          MS. WEISS:  I am suggesting there's a fraudulent

5   inducement claim.  Claimants allege that certain

6   representations were made by Lydian which induced them

7   according to their allegations to sign.

8          THE COURT:  You cannot win every argument you present

9   to every court in the United States.  You are losing this one.

10  You are losing this one.

11         MS. WEISS:  May I --

12         THE COURT:  You can not move for summary judgment now.

13  I am sorry.  I would have worked with you but you are not

14  working with me.  We are going to finish discovery.  Then make

15  your motion.  I did the best I could.  I don't see it your way.

16  I cannot see that Lydian is responsible for all the claims in

17  this arbitration.  Maybe I will see it at the close of

18  discovery.  Maybe your theories will evolve.  It would be funny

19  if it came right around to what I was saying; so be it.  When

20  you get around to briefing it, I will know more.  Maybe some

21  day you will recoup all your fees.  I have no idea.  I can't

22  help you now.

23         MS. WEISS:  Your Honor, if I may, all I was wanting to

24  do here was make a motion for partial summary judgment --

25         THE COURT:  Denied.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C6s4conc

1          MS. WEISS:  -- so that I could get some peas now.  You

2     acknowledge they owe us something.

3          THE COURT:  Make an offer; talk to your adversary.

4          MS. WEISS:  We have; they declined.

5          THE COURT:  No, you have never presented.

6          MS. WEISS:  We had a mediation of the arbitration.  We

7     invited them to attend; they declined.

8          THE COURT:  You are too argumentative.

9          MS. WEISS:  I apologize; I don't mean to be.

10         THE COURT:  I have been in court on and off all day.

11    I am trying to say to you, if you want some coverage, he owes

12    you some coverage, negotiate without prejudice to 100 percent,

13    but say we will take something over nothing at this point,

14    given the fraudulent inducement claim is what eventually leads

15    to everything else, we think you should pay X percent now.

16    Negotiate; see if you get anything.  I don't want multiple

17    summary judgment motions.  It's well-established that the court

18    can control the timing of summary judgment.  We can't deny you

19    the right to do it, but we can decide when and after close of

20    discovery is the right when.

21         You can move up these dates.  You are the one who

22    argued they should be longer.  The schedule that Lydian

23    originally proposed was shorter.  You want it to be longer.

24    Tighten up the schedule and move immediately after that.  Do

25    what you have to do.  I understand.  I feel for you.  I feel

C6s4conc

1    your pain.  You are not getting any coverage and you are

2    entitled to it.  You won the first decision with me.

3           But now what is his obligation.  He is saying that's

4    what discovery is for.  So are you because you may find out

5    things about this transition so to speak that keeps Lydian on

6    the hook or he might find things out about the transition that

7    takes him off the hook.  That's what briefing is for.

8           MS. WEISS:  They already acknowledged they are on the

9    hook for that one claim.

10          THE COURT:  That's true but trying to understand how

11   that one claim relates to the remainder may depend on deposing

12   Lockshin or getting a better understanding of documents that

13   were given to the Shermans, when and by whom.  You say it's

14   right in the emails.  We are not going to have partial summary

15   judgment.  You have a couple options.  You can negotiate with

16   your adversary for partial payment.  You can tighten the

17   discovery schedule and send me a proposed reschedule, tighter.

18   I will probably go along with it.  I understand you are not

19   getting any payment and you should.

20          MS. WEISS:  We are not getting a penny.

21          THE COURT:  That's right.  I understand.  You really

22   should be getting some.  I understand that.

23          MS. WEISS:  I don't see any way to get it other than

24   moving for partial summary judgment at least as to the piece

25   that we all agree they owe us.

C6s4conc

1          THE COURT:  You can't quantify it without discovery;

2     we don't have all the facts.  Lockshin has not been deposed.

3          MR. JACOB:  Correct.

4          THE COURT:  We don't have the facts.  I don't know if

5     all the document stage is done and we are up to depositions.

6     You can propose a tighter schedule or you can negotiate.  Those

7     are your two options.  We will get to summary judgment as fast

8     as we can.  We are only going to get stopped in the middle of

9     summary judgment when he asks for certain discovery in order to

10    oppose.

11         MS. WEISS:  May I ask, what discovery do you think you

12    need just for us to adjudicate this issue, because my clients

13    incurred as you might imagine staggering attorney fees on a

14    daily basis at this point.  We asked them to attend the

15    mediation; they declined.

16         THE COURT:  Was that before or after my decision.

17         MS. WEISS:  That was just two weeks ago we had the

18    mediation.

19         MR. JACOB:  We declined before your decision, your

20    Honor.

21         MS. WEISS:  They knew when the mediation was and they

22    didn't pick up the phone and say we would like to attend.

23         MR. JACOB:  I think the question of what discovery is

24    a very fair question.  We would want to take the depositions of

25    Steve Lockshin, Michael Sherman, whom we understand to be the

C6s4conc

```
1    primary arbitration claimant.  We would like discovery of the

2    Shermans' trust and estate counsel and the reason for that is

3    that according to both the statement of claim and Convergent's

4    pleadings in the arbitration, the structure that was set up,

5    for the Shermans was a very complex structure devised by the

6    trust and estate attorneys.  There have been allegations by

7    Convergent in the arbitration that Lydian was involved in that

8    in ways that we don't think they we were involved in it.

9    Honestly, the answer is not clear to me today.

10             THE COURT:  They say you were involved in how they

11   structured.

12             MR. JACOB:  That allegation has been made to the

13   arbitrators but we believe it is incorrect, so we want

14   discovery on that general subject of how these family trusts

15   were set up to make the investments.  That might involve a

16   deposition of the trust and estate lawyer or maybe we can just

17   do it with paper discovery, and then --

18             THE COURT:  Do you expect an assertion of privilege.

19             MR. JACOB:  I am not sure.  Ms. Weiss might be able to

20   address that.  I think she subpoenaed them in both proceedings.

21   You said it was Patton Boggs.

22             MS. WEISS:  Are you referring to the allegation that

23   Lydian company was the trustee, because I will take you at your

24   word if you tell me it wasn't.  We always thought it was;

25   claimants didn't tell us to the contrary.  I will take you at
```

C6s4conc

1    your word.  You would know better than we.

2              MR. JACOB:  Lydian has looked and does not understand

3    how that contention came to be.  We do not have any records

4    that we were ever a trustee to the Shermans.

5              Then last but not least --

6              THE COURT:  Are you getting any discovery from this

7    trust and estate lawyer or has he asserted privilege.

8              MS. WEISS:  He has not asserted privilege.  We are

9    going to get some discovery.  He moved firms.  The firm we

10   subpoenaed said he took the records with him and the panel

11   actually ordered the claimants in that case to provide us with

12   those documents.  What I am trying to do here, I don't mean to

13   be argumentative, it's late in the day, is just figure out what

14   exact discovery is necessary for me to make this motion.

15             THE COURT:  He said he needs Lockshin, he needs

16   Michael Sherman, and he would like to understand the claim that

17   Lydian is somehow involved in the structuring of this trust.

18             MS. WEISS:  I don't see what that has to do with this.

19             THE COURT:  Because it was raised in the arbitration

20   against Lydian, according to him.

21             MS. WEISS:  It's not.

22             THE COURT:  Mr. Jacob says so.  I wasn't there.

23             MR. JACOB:  Obviously we need document production by

24   Convergent itself concerning the Shermans.

25             THE COURT:  They are not done with that.

C6s4conc

1            MR. JACOB:  We have gotten a lot of documents.  I

2       don't mean to cast this aspect in a bad light at all.  They

3       provided us with a lot of material from the arbitration itself

4       which obviously overlaps with this case.  It's kind of like a

5       case within a case.  Last but not least --

6            THE COURT:  What documents have they not given you.

7            MR. JACOB:  I don't understand that they have made a

8       complete production in response to our document requests.

9            THE COURT:  What's missing.

10           MR. JACOB:  I don't think we have all emails from

11      all --

12           MS. WEISS:  The response is due tomorrow.

13           THE COURT:  You will be getting more.

14           MR. JACOB:  We are not there yet.

15           THE COURT:  You will know tomorrow.

16           MR. JACOB:  There is obviously one last bundle of

17      issues surrounding the legal fees themselves, your Honor.  We

18      obviously don't want to invade privilege or inconvenience

19      Ms. Weiss' law firm.  We are required as counsel for our

20      clients to take a look at the legal time spent and come to an

21      understanding of two things; again, this question of the extent

22      to which it arises out of a certain claim --

23           THE COURT:  There is no agreement on that; they are

24      going to say and have said here all connected.

25           MR. JACOB:  It's just the discovery I need, your

C6s4conc

1   Honor.

2          THE COURT:  What discovery; are you going to get all

3   the time records.

4          MR. JACOB:  Yes.

5          THE COURT:  With line entries of what they did.

6          MR. JACOB:  Well, I think they can waive privilege if

7   we have a confidentiality order that we will do nothing more

8   than look at it for this purpose.  Look, we want the Shermans

9   to lose, your Honor.  There is an extent to which we are allied

10  in interest here.  We are not going to take discovery material

11  and use it in any way that advantages the Shermans.  But we

12  have an obligation as counsel to defendants to look at the

13  legal fees and understand how they were incurred and what they

14  were for, just like any other legal fees application.

15         THE COURT:  It seems to me that comes after your

16  either agreement to pay them or by order that you pay them.

17  Then we worry about the amount.  We can always bifurcate that.

18  First comes your obligation to pay them.

19         MR. JACOB:  If that's your Honor's ruling, that can be

20  left for last; we have time, but we need to do the other things

21  that are outlined.

22         THE COURT:  You need Lockshin, Sherman, maybe this

23  trust and estate lawyer, and the rest of your document

24  production tomorrow.  So, how fast can that be accomplished.

25         MS. WEISS:  We can do that as quickly as the

C6s4conc

1   witnesses, they just sued Lockshin and I am not authorized to

2   appear for him.  I may ultimately be.

3           THE COURT:  Is he still with Convergent.

4           MS. WEISS:  He is, but they sued him personally and I

5   am not authorized to --

6           THE COURT:  He is the CEO of a company you represent.

7           MS. WEISS:  That's correct.

8           THE COURT:  He's certainly accessible to you.

9           MS. WEISS:  That's certainly right.  Since he is now a

10  defendant in his individual capacity, he may have his own

11  counsel.  He may even have an employment agreement with Lydian

12  that requires them to provide counsel; I have no idea.

13          THE COURT:  I have no idea.

14          MS. WEISS:  He may have a motion because I believe the

15  claim against him is as contingent as the one your Honor just

16  dismissed that we asserted.  I just don't know.  I don't

17  represent him.

18          MR. JACOB:  The discovery I have outlined is the

19  discovery relating to the legal fees application;

20  indemnification is a somewhat broader subject.

21          THE COURT:  I realize that.  You have an agreement

22  with Lockshin that what.

23          MS. WEISS:  That may have an employment agreement with

24  Lockshin from his Lydian days that requires them to provide him

25  with counsel; I have no idea.

C6s4conc

```
 1           MR. JACOB:  I don't think it's still in force.  I
 2   would need to look at that.  I don't think there is anything
 3   that I am aware of that is applicable to this situation,
 4   bearing in mind --
 5           THE COURT:  Where did you sue him; where is the suit
 6   against him.
 7           MR. JACOB:  It's a third-party claim.
 8           THE COURT:  Right here.
 9           MR. JACOB:  Correct, because if the Shermans are
10   correct, he committed fraud.  He as a result breached his
11   fiduciary duties; he was an officer of each of the defendants
12   and has the responsibilities of someone who commits fraud
13   generally has.  We pleaded very clearly saying if the Shermans
14   are correct, but if they are correct, that's our position.
15           THE COURT:  We can bifurcate that.  It sounds like you
16   should be able to come back here in maybe six weeks.
17           MS. WEISS:  I would think so; obviously, delay is a
18   hardship to us.
19           THE COURT:  I understand.  I do understand.  You just
20   need enough discovery to able to understand how much or all of
21   the defenses should be covered.  I can't do with it my limited
22   knowledge now.  I will give you another date for another
23   premotion conference.  You have to cooperate.  Since you have
24   access, Ms. Weiss, to Lockshin, it's in your interests to make
25   him available quickly on these issues.  I don't know about the
```

C6s4conc

1    Shermans; they are adversaries to both of you.

2            MS. WEISS:  I don't control.

3            THE COURT:  I realize that.  Mid August.  How about

4    Wednesday, August 15 at 4:30.

5            MR. JACOB:  Fine.

6            THE COURT:  Hopefully the time by which you should get

7    the essential discovery done then we can have another premotion

8    conference and schedule the motion which I think by then I can

9    allow it.  4:30.  OK.  If you have a discovery dispute after

10   you see what Convergent gives you, call my chambers and ask for

11   an immediate conference.  I want to make sure this is ready for

12   August 15.  If anything goes wrong, tell me.

13           MR. JACOB:  Understood, your Honor.

14           THE COURT:  Thank you.

15                              -   -   -

16

17

18

19

20

21

22

23

24

25